IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UFP VENTURES II, INC.,

                Plaintiff,                        OPINION & ORDER

   v.

                                                          13-cv-586-jdp

VIKING POLYMERS, LLC,

                Defendant.

---

Plaintiff UFP Ventures II, Inc. purchased high-density polyethylene from defendant Viking Polymers, LLC several times between 2009 and 2011. UFP used the polyethylene to manufacture wood and plastic composite boards used for constructing decks. In 2010, UFP began to receive complaints from customers that the deck boards made with Viking's polyethylene had formed a haze on the surface, giving the boards a cloudy appearance. In 2013, UFP filed this lawsuit for breach of warranty of merchantability, breach of warranty of fitness for a particular purpose, and property damage. UFP invokes this court's jurisdiction on the basis of diversity of the parties under 28 U.S.C. § 1332.[1]

Now before the court is Viking's motion for partial summary judgment. Dkt. 30. Viking asks the court to hold that UFP's remedies are limited to replacement or a refund as provided in Viking's terms and conditions. Viking contends that it sent its standard terms and conditions to UFP with each order and that because UFP failed to object to them, UFP is bound by those standard terms and conditions. But whether Viking sent the terms and conditions to UFP is sharply disputed. UFP contends that it never received the terms and conditions, and Viking

---

[1] Early in this case, the court expressed concern regarding its own jurisdiction and the diversity of the parties. Dkt. 12. UFP filed an amended complaint addressing the court's concern, Dkt. 15, and the court concluded that, as alleged, it has jurisdiction. Dkt. 18. However, the court invited Viking to challenge the allegations of citizenship at summary judgment. *Id.* Viking has not challenged the amended jurisdictional allegations.

cannot come up with a copy of the order paperwork as sent to UFP. At this point, UFP's receipt and acceptance of the terms and conditions is a disputed question of material fact, and Viking's motion for partial summary judgment will be denied.

## BACKGROUND FACTS

The facts concerning the background to the transactions giving rise to this case are not disputed. In early 2009, UFP began purchasing high-density polyethylene from Viking to use in manufacturing wood and plastic composite boards. High-density polyethylene is a plastic material. To manufacture the boards, UFP uses a method of coextrusion to surround the board with a thin plastic cap. Coextrusion forces the plastic material through various dies, which adheres the plastic cap to the boards. After the boards were manufactured, UFP sold them to distributers and consumers for use in building decks.

Between 2009 and 2011, Viking sold UFP at least 13 orders of polyethylene, collecting a total of $310,725.31 for the material. In 2010, UFP began to receive complaints from customers that the boards had formed a haze that gave them a cloudy appearance. On August 19, 2013, UFP filed this lawsuit against Viking alleging breach of warranty of merchantability, breach of warranty of fitness for a particular purpose, and property damage.

The facts concerning whether Viking sold the polyethylene to UFP subject to terms and conditions are disputed. Viking claims that it confirmed every order with a two-sided "Order Acknowledgement" form, which had its standard terms and conditions on the back. But Viking has not produced copies of the pertinent order acknowledgment forms. According to Viking, it does not keep a copy of both sides of the order acknowledgment forms, because the back side is always the same. Without copies of the order acknowledgment forms, Viking moved for summary judgment relying on a 1994 document entitled "Terms and Conditions for Sale" (the

1994 Terms and Conditions). But the 1994 Terms and Conditions document was not dated and did not include any information that would connect it to a specific customer, transaction, or other document. UFP challenged the admissibility of this document in its summary judgment opposition. In its reply, Viking submitted additional declarations and supplemental proposed findings of fact purporting to establish that the 1994 Terms and Conditions for Sale document reflected the terms and conditions applied invariably to all Viking orders.

UFP moved to strike the reply evidence, or in the alternative, requested the opportunity to file a sur-reply. Dkt. 49. The court struck Viking's supplemental proposed facts and gave UFP the opportunity to take the depositions of the declarants before filing a sur-reply. Dkt. 53. UFP's sur-reply makes it clear that Viking has not established that the 1994 Terms and Conditions were sent to UFP.

ANALYSIS

To prevail on its motion for summary judgment, Viking must show that UFP was bound by its terms and conditions. To show that, Viking must show that the terms and conditions were provided to UFP. Viking must also show that UFP assented to those terms and conditions, and that the terms and conditions are enforceable. If Viking can show all this, UFP's remedies would be limited to replacement or refund, and perhaps not even that because the terms and conditions also impose deadlines for seeking any remedy.

**A. Standard of review**

Partial summary judgment limiting UFP's remedies is appropriate if Viking can show "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law" on the question of potential remedies. Fed. R. Civ. P. 56(a). The court considers the facts in the summary judgment record in the light most favorable to UFP, the non-moving

3

party, and draws all reasonable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To survive summary judgment, UFP must go beyond its pleadings and identify specific material facts showing genuine issues for trial "such that a reasonable jury could return a verdict" in its favor. *Id.*, at 248.

**B.  The 1994 Terms and Conditions at summary judgment**

According to the testimony of its owner, John Ammondson, and its former logistics coordinator, Tammie English, Viking's practice was to enter new order information into its system and then print three copies of a form confirming the order. The first copy would be printed onto a two-sided "order acknowledgement form," labeled "customer original" on the bottom, with the terms and conditions preprinted onto the back. That copy would be sent to the customer. Viking did not save copies of the two-sided form, presumably because the back side was always the same. The Viking would print two additional copies, both entitled "order number." One of those copies would go to the planning division to prepare the order and the last copy would go into the customer's file. Ordinarily, one would expect that Viking would support its motion for summary judgment with a declaration attaching copies of the order acknowledgements for each of the disputed transactions. But Viking does not have copies of *any* of the order acknowledgments, and it does not have a copy of any order acknowledgement form showing that the terms and conditions were on the back.

The only copy of the terms and conditions produced by Viking in this case was the 1994 Terms and Conditions document, a single-sided document. Dkt. 41, at 5. The produced copy was not dated, was not addressed to or signed by UFP, and did not include any other indication of receipt by UFP. Viking produced only one copy of an "order acknowledgement" form for a single UFP order (which was in fact a later order not pertinent to this dispute). But that order acknowledgement example does not refer to any terms and conditions, and did not include the

4

back side of the form. Viking contends that because it sent the double-sided order acknowledgement forms with terms and conditions to customers, the pertinent order acknowledgement documents should be in UFP's possession. But UFP maintains that it has no such forms. UFP was able to produce a copy of one of the "order number" forms, although according to the Viking process described by Ammondson and English, that copy should have remained with Viking. The bottom line is that Viking has no documentary evidence that the purported terms and conditions were sent to UFP.

      Viking's testimonial evidence fails to fill the gaps in its documentary evidence. The provenance of the terms and condition document is uncertain. The document was not copied from any actual order acknowledgment form. Ammondson got it from Viking's former comptroller, and Ammondson did not know where he got it. Neither Ammondson nor English knew for sure the title of the document that the terms and conditions were supposed to have been printed on. Although Ammondson denied that the terms and conditions changed at all from 1994 to 2014, he admitted that his current law firm reviewed them at some point and may have changed "a few words here and there." Ammondson conceded that he did not know if the 1994 terms and conditions document reflected the terms and conditions in use during the disputed transactions with UFP. Ammondson could not explain how UFP ended up with a copy of the "order number" document. Ammondson admitted that Viking did not have any copy of the terms and conditions as they would have been sent to UFP.

      Viking must leap several evidentiary hurdles. First, the terms and conditions must be authentic. Fed. R. Evid. 901; *Graffia v. C.I.R.*, No. 13-cv-3755, 2014 WL 5304906, at *2 (7th Cir. Oct. 17, 2014) ("Authenticity is a precondition to admissibility."). Next, the terms and conditions must fall within an exception to the hearsay rule, which would otherwise prevent their admissibility. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Viking

contends that they fall under the business records exception in Rule 803(6). Then, to establish that they were actually sent to and received by UFP at least once, Viking contends that its regular business practice was to send the terms and conditions with each order, so it follows that it must have sent them with UFP's orders and UFP must have received them. Lastly, Viking must surmount a legal hurdle: the terms and conditions must have been accepted by UFP. Viking offers UFP's silence as proof of assent.

Viking's argument fails at the first hurdle because the company cannot prove the authenticity of the terms and conditions. The terms and conditions document that was produced is not the original two-sided form created for each UFP order. It is not even a copy of the original two-sided form. It is at best a copy of the preprinted form created in 1994 without any order-specific information. Further, Viking has no way to prove that the produced copy of the terms and conditions matches the version that it claims to have sent to UFP on the back of each order acknowledgement form. Viking has failed to show that the terms and conditions it produced in discovery is an authentic copy of the version used on Viking's order acknowledgments.

Even if the 1994 terms and conditions document were authenticated, Viking cannot show that they fit in the business records hearsay exception. Under Rule 803(6), hearsay is admissible within the exception if: it was made at or near the time by someone with knowledge; it was kept in the course of a regularly conducted business activity; it was a regular practice of the activity; these conditions are attested to by a qualified witness; and the evidence does not indicate a lack of trustworthiness. The terms and conditions fail the first requirement. The produced copy was not created at or near the time of the transactions with UFP. It was created by Viking's attorney 20 years ago. It is not admissible as a business record.

Next, Viking cannot establish that the terms and conditions were actually sent to and received by UFP. Viking relies on deposition testimony to demonstrate that its regular practice was to send the terms and conditions on the back of every "order acknowledgement" form that it sent to customers. But Viking retained an "order acknowledgement" copy in its own records that, according to its process, should have been sent to the customer. It also sent an "order number" copy to UFP that it should have retained for its own records. Further, Viking does not offer any outgoing mail log or receipt proving that it sent any of the forms, let alone the versions that allegedly included the terms and conditions. UFP claims to have never received the terms and conditions. Counsel for UFP attests that after a diligent search in the company's records, they were not able to find either the order acknowledgement or the terms and conditions. However, they were able to find the purchase orders, invoices, bills of lading, and proof of payment for the 13 transactions. Viking's evidence of its purported practice establishes confusion and inconsistency. It does not provide a basis to conclude that the 1994 Terms and Conditions were systematically included on every order acknowledgement, including those for the 13 transactions at issue.

The final hurdle in Viking's argument is that it cannot show that UFP accepted the terms and conditions. Even if Viking could demonstrate UFP's receipt of the terms and conditions, Viking fails to articulate a theory under which UFP agreed to be bound. Viking relies exclusively on the terms and conditions, which (at least in the 1994 version) stated that failure to object to them within 10 days after receipt constitutes agreement with them. Under Wisconsin law however, silence does not generally constitute acceptance of a contract. *Sell v. Gen. Elec. Supply Corp.*, 227 Wis. 242, 278 N.W. 442, 447 (1938). The Restatement (Second) of Contracts does provide exceptions to the general rule, including the potentially applicable scenario where the terms themselves state that silence constitutes acceptance. Restatement

7

(Second) of Contracts § 69 (1981). However, Viking has not offered any authority demonstrating that Wisconsin has adopted this exception. Therefore, the court cannot conclude as a matter of law that UFP accepted the terms and conditions. Viking's motion for summary judgment will be denied.

**C.  The 1994 Terms and Conditions at trial**

UFP would like the court to go further. In addition to denying Viking's motion for summary judgment, UFP asks the court to (1) hold that the 1994 Terms and Conditions document is inadmissible at trial; and (2) deem that Viking has waived any argument that the limitation of liability in the terms and conditions would be enforceable.

As for the admissibility of the 1994 Terms and Conditions: because this issue arises in the context of Viking's motion, the court is reluctant to give affirmative relief to UFP without giving Viking a full opportunity to respond. That said, there is no basis in the record so far for admitting the 1994 Terms and Conditions (or any other version) at trial. Nevertheless, the court will entertain this issue on a motion in limine before trial, which will give Viking a chance to respond to it in writing.

As for the enforceability of the limitation of liability provisions: UFP is correct that Viking's response to UFP's argument is a single, underdeveloped paragraph. Nevertheless, Viking makes an important point that is not adequately addressed in UFP's brief, which itself treats the issue in rather summary form. UFP's argument is that a remedy limitation is void if it fails of its essential purpose, which is to make the injured party whole. Citing *Phillips Petroleum Co. v. Bucyrus-Erie Co.*, 131 Wis. 2d 21, 388 N.W.2d 584 (1986), UFP contends that the refund remedy would provide only a fraction of the damages to which UFP should be entitled as a result of the defective polyethylene, which apparently will lead to substantial claims from

8

unhappy homeowners who will have to repair their decks. Because a refund fails to make UFP whole, it fails of its essential purpose, and therefore it is void. But this logic would apply to any provision that limited consequential damages, and Wisconsin courts have regularly approved such allocations of risk between parties to a business transaction. "An agreed remedy does not fail of its essential purpose because it results in the party that bears the risk suffering the risk." *S. Fin. Grp., LLC v. McFarland State Bank*, 763 F.3d 735, 741 (7th Cir. 2014) (applying Wisconsin's version of the UCC). Because this issue has not been adequately developed by either party, I decline to rule that the limitation of liability is unenforceable.

ORDER

IT IS ORDERED that Defendant Viking Polymers, LLC's motion for partial summary judgment, Dkt. 30, is DENIED.

Entered this 18th day of November, 2014.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge